UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| DONALD STANTON, )<br>(Social Security No. XXX-XX-8649), )<br>  )<br>          Plaintiff, )<br>  )<br>     v. )<br>  )<br>JO ANNE B. BARNHART, Commissioner )<br>of the Social Security Administration, )<br>  )<br>          Defendant. ) | Cause No. 3:05-cv-201-RLY-WGH |

# MEMORANDUM DECISION AND ORDER

### I. Statement of the Case

Plaintiff, Donald Stanton, seeks judicial review of a final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Social Security Income ("SSI") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d), 1381(a); 20 C.F.R. § 404.1520(f). The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff applied for DIB and SSI on June 17, 2003, alleging disability since May 23, 2003. (R. 92-94, 280-81). The agency denied Plaintiff's application both initially and on reconsideration. (R. 67-72, 282-89). Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on September 16, 2004. (R. 27-62). Plaintiff was represented at the hearing by his attorney, J. Michael Woods. (R. 27). Also testifying was a vocational expert ("VE"). The ALJ issued a decision on March 18, 2005, finding that Plaintiff was not disabled because he retained the residual functional capacity to perform a

significant number of jobs in the regional economy. (R. 18-26). Plaintiff filed a request for review with the Appeals Council on April 6, 2005. (R. 14). The ALJ's decision became the agency's final decision when the Appeals Council denied Plaintiff's request for review on October 6, 2005. (R. 6-8). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed his Complaint on November 1, 2005, seeking judicial review of the ALJ's decision.

## II.  Medical Evidence

Plaintiff has a history of diabetes, scoliosis, and depression, and his medical records concerning these impairments are as follows.

In January and March 2002, Plaintiff's neuropathy was "doing ok." (R. 233-34). He complained of back pain in March 2002. (R. 233). In May 2002, his symptoms were noted to be "better and [he] feels better overall." (R. 231). On May 10, 2002, Plaintiff's "sugars [were] doing very well," he was "feeling great–good energy." (R. 230). In May 2003, the month he claimed disability, Plaintiff's diabetes was reportedly "fairly well controlled." (R. 224).

In August 2003, Dr. William U. Weiss, a psychologist, consultatively examined Plaintiff. (R. 188). Plaintiff reported that he last worked out of his home in "July of 2002." (R. 188). He also reported having insulin dependent diabetes, with neuropathy in his feet, legs and stomach; he claimed his eyes were "getting bad," and he had scoliosis. (R. 188). Mentally, Plaintiff claimed to be angry and depressed, though he had never sought treatment. (R. 189). Dr. Weiss examined Plaintiff and diagnosed a mood disorder due to diabetes, with depressive features, and he assigned a Global Assessment of Functioning (GAF) score of 60,

indicating moderate symptoms. (R. 192).

On August 12, 2003, Dr. Kip Beard conducted a physical examination of Plaintiff at the request of the state agency. (R. 193). Plaintiff reported a history of diabetes for which he took insulin; he also complained of dizziness over the last "couple of months," if he moved around too fast. (R. 193). Though he complained of back pain for several years, he never had surgery, injections, or physical therapy, had never been seen by a chiropractor, and had not used heat, ice, or a brace for pain. (R. 194). On physical examination, Plaintiff had 20/20 left eye and 20/25 right eye visual acuity without corrective lenses. (R. 195). His extremities were normal; he had cervical spine tenderness but normal flexion and extension, and preserved rotation; he had scoliosis of the spine, with pain and tenderness, but no muscle spasm, and no sensory deficit other than diminished vibratory sensation in his foot, he had normal strength in all extremities and no muscle atrophy. (R. 197). There was "no evidence of radiculopathy." (R. 198). He had a mildly neuropathic gait and mild imbalance with tandem walking, but otherwise walked normally. (R. 198). Dr. Beard concluded that Plaintiff could sit, stand, and handle objects without limitations, but could not perform prolonged walking, and should avoid hazards such as heights, scaffolds, climbing ladders, and slippery surfaces. (R. 198). He also felt Plaintiff would be limited from repetitive or heavy lifting or carrying, and repetitive bending. (R. 198).

In September and December 2003, two state agency physicians reviewed the medical evidence and concluded Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and sit, stand, and walk for about six hours each in an eight hour workday; he should never climb ladders, ropes, or scaffolds, and should avoid slick and uneven surfaces. (R. 181, 183).

On October 23, 2003, Plaintiff saw Dr. Alexander Dela Llana, a resident physician, and reported his blood sugars "seem to be under control" but he had a burning sensation and numbness in both feet, usually at night. (R. 212). He denied any blurred vision. (R. 212). He also reported back pain and difficulty bending and lifting "heavy objects;" he had no tenderness on spinal examination. (R. 212-13). Dr. Dela Llana gave Plaintiff medication and encouraged physical therapy. (R. 213). The next day, Plaintiff sought a "letter for Medicaid stating that he is not able to work because of diabetes complications." (R. 211). Later that month, on October 28, 2003, Plaintiff complained of back pain. (R. 209). Dr. Dela Llana noted that Plaintiff's "diabetes . . . seems to be under good control." (R. 209). Though he had scoliosis, he had negative straight leg testing, and his extremities were normal. (R. 209). Dr. Dela Llana gave Plaintiff pain medication and indicated he would refer him to an orthopedic surgeon if his back symptoms persisted. (R. 210).

In December 2003, state agency reviewing psychologists reviewed the medical evidence noted Plaintiff took no medication and sought no mental treatment, and concluded that Plaintiff did not have a severe mental impairment. (R. 166).

Dr. Dela Llana saw Plaintiff in follow up on December 16, 2003. (R. 249). Plaintiff reported that his back pain had improved slightly with medication. (R. 249). Physical examination revealed no limitation in movement, negative straight leg raising, and no

indication of nerve problems or radiculopathy. (R. 249-50). Plaintiff reported that his blood sugars were "better controlled" since he began using Accu-Cheks. (R. 249).

In March 2004, spinal x-rays indicated exaggerated lumbar lordosis and thoracic spine kyphosis. (R. 252-53). On April 1, 2004, Plaintiff was referred to an orthopedic surgeon. (R. 245).

On July 20, 2004, Dr. Dela Llana saw Plaintiff, who reported a July 14, 2004 hospitalization for syncope, hypotension, uncontrolled diabetes, neuropathy, worsening scoliosis and headache; hospital notes indicated Plaintiff was admitted for reported syncope episode but had no tenderness in his spine. (R. 254, 265, 267). Plaintiff's blood sugars were now under better control but he complained of back pain that was 5 out of 10 in severity (on a 0-10 point scale) and was aggravated by bending. (R. 254). Dr. Dela Llana also indicated that an examination of Plaintiff's spine indicated worsening scoliosis. (R. 254).

On September 7, 2004, after Plaintiff's March 2004 spinal x-rays and Dr. Dela Llana's evaluation from July 2004 where he indicated worsening scoliosis, Dr. Dela Llana wrote a letter indicating he treated Plaintiff's diabetes, diagnosed in 1997, and reported Plaintiff's problems had worsened. (R. 270). Dr. Dela Llana indicated Plaintiff had peripheral neuropathy with pain and swelling in his left leg and ongoing problems with scoliosis. (R. 276). He indicated that back pain increased with "minimal exertion, and Plaintiff needed to take breaks to rest and alleviate back pain and to elevate his legs waist high to relieve pain and swelling in his legs." (R. 276). Dr. Dela Llana also stated that he "believe[d] that there are several times per month that his back pain increases to the point of not being able to perform even simple daily activities." (R. 276). And, Dr. Dela Llana suggested that Plaintiff may

need extensive evaluation by an orthopedic specialist because of Plaintiff's "severely debilitating scoliosis." (R. 276).

### III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this Court may not re-evaluate the facts, weigh the evidence anew or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV. Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five step test the ALJ is to

perform in order to determine whether a claimant is disabled.  *See* 20 C.F.R. § 416.920.  The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  *Id.*  The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner.  *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ, Marsha Stroup, concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 25).  The ALJ continued by finding that, in accordance with 20 C.F.R. § 416.920(b), Plaintiff had six impairments that are classified as severe:  diabetes, neuropathy, heart disease, syncopal episodes, scoliosis, and depression.  (R. 25).  The ALJ concluded that none of these impairments met or were substantially similar to any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 25).  Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of his limitations were not fully credible.  (R. 25).  Consequently, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work with limitations of no climbing, no use of foot pedals, no fine visual work, and no hazardous conditions or extreme temperatures.  (R. 26).  The ALJ determined that, because of these limitations, Plaintiff could not perform his past work.  (R. 26).  The ALJ went on to conclude that Plaintiff was able to perform some

work; Plaintiff was a "younger individual" with a high school education and, based on his limitations, he retained the residual functional capacity to perform a limited range of light work including light sedentary work as a cashier, light work as a clerk or a general office clerk, and sedentary work as an order clerk or security monitor. (R. 26). The ALJ concluded by finding that Plaintiff was not under a disability. (R. 26).

### VI.  Issues

The Court concludes that Plaintiff has raised two issues. The issues are as follows:

1. Did the ALJ properly consider the evidence from Dr. Alexander Dela Llana, Plaintiff's treating physician?

2. Did the ALJ properly consider the evidence from Dr. William Weiss?

**Issue 1:      Did the ALJ properly consider the evidence from Dr. Alexander Dela Llana, Plaintiff's treating physician?**

Plaintiff's first argument is that the ALJ failed to take into consideration the opinions of Dr. Alexander Dela Llana in making her conclusions about Plaintiff's residual functional capacity. The medical evidence indicates that Dr. Dela Llana was a "Resident" Family Practitioner who evaluated Plaintiff from at least October 2003 to September 2004.[1] During this period Dr. Dela Llana observed continuously worsening scoliosis. This culminated with Dr. Dela Llana's examination of Plaintiff in July 2004 (after presumably seeing Plaintiff's spinal x-rays from March) in which he examined Plaintiff's spine and indicated that Plaintiff had worsening scoliosis. Dr. Dela Llana opined in September of 2004 (R. 270) that Plaintiff

---

[1] Dr. Dela Llana was identified as a "Resident" in earlier visits (R. 210, 213), but not so identified during later visits (R. 250, 270).

had severely debilitating scoliosis and that the impairment was severe enough to cause Plaintiff enough pain that, if he were to work, he would have to take breaks at times because of the pain and would miss work because of the pain. Dr. Dela Llana also indicated that he found Plaintiff's diabetic condition to have led to the development of peripheral neuropathy with increased pain and swelling in his left lower extremity. (R. 270).

This certainly qualifies as evidence from a treating physician. Plaintiff argues that such opinions of a treating physician are generally entitled to controlling weight. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

The Seventh Circuit Court of Appeals has recently rendered a decision addressing "the treating physician rule" codified at 20 C.F.R. § 404.1527(d)(2). *Hofslien v. Barnhart,* 439 F.3d 375 (7th Cir. 2006). The opinion stated that the "rule" "has been around a long time," its "meaning and utility . . . are uncertain," and that "[i]t is time that the Social Security Administration reexamined the rule." *Id.* at 376.

The guidance the Seventh Circuit gave in *Hofslien* includes this language:

> The rule directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence." Obviously if it is well supported and there is no contradictory evidence, there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it. Equally obviously, once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight.
>
> Where does that leave the administrative law judge? There are two possibilities. One is that, by analogy to presumptions that disappear when evidence in opposition to the presumed fact is introduced ("bursting bubble" presumptions, *Gacy v. Welborn,* 994 F.2d 305, 313 (7th Cir. 1993); *Costa v. Desert Palace, Inc.,* 299 F.3d 838, 855 n.6 (9th Cir. 2002); *Lepre v. Department of Labor,* 275 F.3d 59, 69 (D.C.Cir. 2001)), the rule drops out and the treating

-9-

physician's evidence is just one more piece of evidence for the administrative law judge to weigh. Another possibility is that his evidence retains a tiebreaker role: if the treating physician's evidence and the contrary evidence are in equipoise, his view prevails. The first seems the more plausible interpretation, as well as being more consistent with the case law; we have found no cases that adopt the equipoise interpretation.

The rule goes on to list various factors that the administrative law judge should consider, such as how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, and so forth. The checklist is designed to help the administrative law judge decide how much weight to give the treating physician's evidence. When he has decided how much weight to give it, there seems no room for him to attach a presumptive weight to it.

The advantage that a treating physician has over other physicians whose reports might figure in a disability case is that he has spent more time with the claimant. The other physicians whose reports or other evidence are presented to the administrative law judge might never even have examined the claimant (that was true here), but instead have based their evidence solely on a review of hospital or other medical records. But the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since, as is well known, many physicians (including those most likely to attract patients who are thinking of seeking disability benefits, *cf.* Seth A. Seabury, Robert T. Reville & Frank Neuhauser, "Physician Shopping in Workers' Compensation: Evidence from California," 3 *Journal of Empirical Legal Studies* 47 (2006)) will often bend over backwards to assist a patient in obtaining benefits. *Black & Decker Disability Plan, supra,* 538 U.S. at 832, 123 S.Ct. 1965; *Hawkins v. First Union Corp. Long-Term Disability Plan,* 326 F.3d 914, 917 (7th Cir. 2003), and cases cited there. Moreover, though not in this case, the treating physician is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are.

So the weight properly to be given to testimony or other evidence of a treating physician depends on circumstances. As explained in the accompanying order, the administrative law judge was justified in giving greater weight to the medical evidence that contradicted the treating physician's evidence than to his evidence.

In this case, the ALJ did discuss medical records from Dr. Dela Llana as a part of

records from St. Mary's Medical Center. (R. 243-69). The ALJ made only the briefest of

passing mentions of the last report from Dr. Dela Llana dated September 7, 2004. (R. 250).[2]

It is in this last report that Plaintiff argues that his condition worsened.

The ALJ's analysis of the Plaintiff's scoliosis and peripheral neuropathy is found at page 23 of the record where the ALJ states:

> A review of the medical and other evidence shows the claimant has scoliosis, but physical examinations are normal with no evidence of radiculopathy. While he has some trouble regulating blood sugar levels, office notes from his physician on many instances show blood sugar level is fine. The consulting internal medicine consulting specialist found mild neuropathy and the possibility of early retinopathy, however, the record does not support a severe recurring problem.
>
> * * * * *
>
> Thus, while the claimant has impairments capable of producing pain and limitations, it does not support the claimant's description of his limitations because of the pain. While the claimant's general testimony describing his specific limitations and activities is credible, the undersigned finds that the claimant's statements regarding the effect of his impairments upon his ability to work are not wholly credible (SSR 96-7p).

Therefore, it appears that the ALJ chose the opinion of the "consulting internal medicine consulting specialist" over that of Dr. Dela Llana. There is a consulting specialist – Dr. Bland – who conducted an examination on August 12, 2003 (R. 193-98) which does suggest that Plaintiff does not have the degree of impairment from scoliosis or peripheral neuropathy that Dr. Dela Llana suggested in August 2003. The difficulty with this decision is that Dr. Beard's examination and that of Dr. Dela Llana in October of 2003 are quite consistent. (R. 209-10). However, in the year that followed, Dr. Dela Llana noted a significant deterioration in the Plaintiff's condition which resulted in a July 2004

---

[2]The ALJ's opinion at page 21 of the record mentions this only in connection with Plaintiff's depression and not with respect to his scoliosis or peripheral neuropathy.

hospitalization for "syncope, orthostatic hypotension, Type II diabetes uncontrolled, diabetic neuropathy as well as his worsening scoliosis and headache." (R. 254). The orthopaedic condition was serious enough at that time to warrant referral to an orthopaedic surgeon, though Plaintiff's financial condition prohibited this from occurring. (R. 254).

There is no conflicting evidence to that of the Plaintiff's treating physician that in July 2004 and thereafter the Plaintiff's diabetic neuropathy and scoliosis had worsened to a point where his pain would require frequent rest periods. This is important because if Plaintiff's condition required frequent rest periods, that condition could impact the Plaintiff's ability to hold any job due to absenteeism.

At Plaintiff's hearing, ALJ Stroup questioned the vocational expert ("VE"), John Grenfell, about whether an individual who took significant breaks and had to miss some work would be employable. The VE confirmed that an employer would not be tolerant of such breaks and absences from work.[3] Thus, had ALJ Stroup accepted the opinions of Dr. Dela Llana concerning Plaintiff's latest scoliosis condition, ALJ Stroup might have to conclude that Plaintiff no longer retained the residual functional capacity to perform a substantial number of jobs in the economy.

This Court is unable to determine from this opinion whether the ALJ gave appropriate consideration to the treating physician's apparently uncontradicted opinion that Plaintiff's scoliosis – while initially not disabling – worsened in July 2004 to the point where hospitalization was required, and thereafter frequent breaks would have been necessary in the

---

[3] While the hypothetical question asked to the VE about absences and breaks did not specifically concern Plaintiff's scoliosis, it is still relevant because it evaluated the effect that taking breaks and missing work would have on Plaintiff's ability to work.

workplace. Nor are we able to discern at what exact point in time the Plaintiff's condition would have reached that state. Therefore, this Court concludes that it is appropriate that this matter be remanded for the ALJ to further articulate how Dr. Dela Llana's opinions and other medical evidence of record should be balanced for the time period from July 2004, when it appears that Plaintiff's condition worsened.

**Issue 2:       Did the ALJ properly consider the evidence from Dr. William Weiss?**

Because the Court has already concluded that remand is necessary, an examination of the ALJ's treatment of the opinions of Dr. Weiss is not necessary. However, on remand, consideration must be taken of all of Plaintiff's serious medical conditions and articulation of Dr. Weiss' opinions will be a part of that process.

## VII.  Conclusion

The ALJ's decision concerning Plaintiff's RFC does not articulate how the ALJ considered Dr. Dela Llana's opinions about the Plaintiff's worsened scoliosis condition in July 2004 with the other medical evidence. The ALJ's decision is, therefore, **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED.**

**Dated:  January 25, 2007.**

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

**Electronic copies to:**

J. Michael Woods
WOODS & WOODS
mwoods@woodslawyers.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov